**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RONALD A. KATZ TECHNOLOGY      )
LICENSING, L.P.,                               )
                                                         )
               Plaintiff,                            )
                                                         )          Civil Action No. 07-368-GMS
       v.                                              )
                                                         )
CITIZENS COMMUNICATIONS CO.,  )
FRONTIER COMMUNICATIONS OF    )
AMERICA, INC., FRONTIER              )
SUBSIDIARY TELCO LLC, LEAP        )
WIRELESS INTERNATIONAL, INC.,   )
AND CRICKET COMMUNICATIONS,    )
INC.,                                                  )
                                                         )
               Defendants.                        )
                                                         )

## ANSWER OF THE CITIZENS COMMUNICATIONS DEFENDANTS

Defendants Citizens Communications Co., Frontier Communications of America, Inc.,

and Frontier Subsidiary Telco LLC (collectively, "Citizens Communications Defendants")

respond as follows to the allegations and averments in Plaintiff Ronald A. Katz Technology

Licensing, L.P.'s ("RAKTL") Complaint:

### THE PARTIES

1.      The Citizens Communications Defendants are without knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint,

except they admit that the California Secretary of State's unofficial records indicate that Ronald

A. Katz Technology Licensing, L.P. is a California limited partnership with an address of 9220

Sunset Blvd., Ste. 315, Los Angeles, California  90069.

2.     The Citizens Communications Defendants admit the allegations in paragraph 2 of the Complaint, except they state that Defendant Citizens Communications Co. maintains its principal place of business at Three High Ridge Park, Stamford, Connecticut 06905.

3.     The Citizens Communications Defendants admit the allegations in paragraph 3 of the Complaint.

4.     The Citizens Communications Defendants admit the allegations in paragraph 4 of the Complaint.

5.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7.     The Citizens Communications Defendants admit that the Complaint purports to set forth a patent infringement claim under the United States patent statutes, 35 U.S.C. § 1 *et seq.*

8.     The Citizens Communications Defendants admit that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     The Citizens Communications Defendants admit that they are Delaware entities and have designated an agent for service of process in Delaware. The Citizens Communications Defendants deny the remaining allegations in paragraph 9 of the Complaint.

10.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11.     The Citizens Communications Defendants admit that venue is proper in the District of Delaware under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## BACKGROUND FACTS

12.      The Citizens Communications Defendants admit that the following U.S. Patents listed in the "Patents-In-Suit" section of RAKTL's Complaint appear to have issued from the United States Patent and Trademark Office ("PTO"): U.S. Patent Nos. 5,128,984; 5,251,252; 5,255,309; 5,259,023; 5,351,285; 5,561,707; 5,684,863; 5,787,156; 5,815,551; 5,828,734; 5,898,762; 5,917,893; 5,974,120; 6,035,021; 6,148,065; 6,335,965; 6,434,223; 6,512,415; and 6,678,360 (collectively, "Patents-in-Suit"). The Citizens Communications Defendants admit that Ronald A. Katz is listed as the purported inventor on each of the Patents-in-Suit. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 12 of the Complaint.

13.      The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.      The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15.      The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.      The Citizens Communications Defendants admit that U.S. Patent No. 4,792,968 appears to have issued from the PTO on December 20, 1988 and that Ronald A. Katz is named as the purported inventor on that patent. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 16 of the Complaint.

17.      The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.    As to the allegations set forth in paragraph 23 that are directed towards Citizens Communications, the Citizens Communications Defendants admit that RAKTL attempted to engage it in licensing negotiations with A2D but state that this action was filed without any notice, either oral or written, to the Citizens Communications Defendants. The Citizens Communications Defendants deny that any communications between it and RAKTL or A2D constitute admissions or acknowledgments by the Citizens Communications Defendants regarding the validity of the Patents-in-Suit or their applicability to the Citizens Communications Defendants' business. As to the remaining allegations set forth in paragraph 23 of the Complaint that are directed toward the Citizens Communications Defendants, the Citizens Communications Defendants deny the allegations in paragraph 23 of the Complaint. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 23 of the Complaint.

## THE PATENTS-IN-SUIT

24.    The Citizens Communications Defendants admit that U.S. Patent No. 5,128,984 ("the '984 patent"), entitled "Telephone Interface Call Processing System With Call Selectivity," appears to have issued from the PTO on July 7, 1992, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '984 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 24 of the Complaint.

25.    The Citizens Communications Defendants admit that U.S. Patent No. 5,251,252 ("the '252 patent"), entitled "Telephone Interface Call Processing System With Call Selectivity" appears to have issued from the PTO on October 5, 1993, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '252 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 25 of the Complaint.

26.    The Citizens Communications Defendants admit that U.S. Patent No. 5,255,309 ("the '309 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on October 19, 1993, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '309 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 26 of the Complaint.

27.    The Citizens Communications Defendants admit that U.S. Patent No. 5,259,023 ("the '023 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have

issued from the PTO on November 2, 1993, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '023 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 27 of the Complaint.

28.    The Citizens Communications Defendants admit that U.S. Patent No. 5,351,285 ("the '285 patent"), entitled "Multiple Format Telephonic Interface Control System," appears to have issued from the PTO on September 27, 1994, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '285 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 28 of the Complaint.

29.    The Citizens Communications Defendants admit that U.S. Patent No. 5,561,707 ("the '707 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on October 1, 1996, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '707 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 29 of the Complaint.

30.    The Citizens Communications Defendants admit that U.S. Patent No. 5,684,863 ("the '863 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on November 4, 1997, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '863 patent is valid

and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 30 of the Complaint.

31.    The Citizens Communications Defendants admit that U.S. Patent No. 5,787,156 ("the '156 patent"), entitled "Telephonic-Interface Lottery System," appears to have issued from the PTO on July 28, 1998, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '156 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 31 of the Complaint.

32.    The Citizens Communications Defendants admit that U.S. Patent No. 5,815,551 ("the '551 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on September 29, 1998, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '551 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 32 of the Complaint.

33.    The Citizens Communications Defendants admit that U.S. Patent No. 5,828,734 ("the '734 patent"), "Telephone Interface Call Processing System with Call Selectivity," appears to have issued from the PTO on October 27, 1998, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '734 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 33 of the Complaint.

34.    The Citizens Communications Defendants admit that U.S. Patent No. 5,898,762 ("the '762 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on April 27, 1999, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '762 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 34 of the Complaint.

35.    The Citizens Communications Defendants admit that U.S. Patent No. 5,917,893 ("the '893 patent"), entitled "Multiple-Format Telephonic Interface Control System," appears to have issued from the PTO on June 29, 1999, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '893 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 35 of the Complaint.

36.    The Citizens Communications Defendants admit that U.S. Patent No. 5,974,120 ("the '120 patent"), entitled "Telephone Interface Call Processing System with Call Selectivity," appears to have issued from the PTO on October 26, 1999, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '120 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 36 of the Complaint.

37.    The Citizens Communications Defendants admit that U.S. Patent No. 6,035,021 ("the '021 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have

issued from the PTO on March 7, 2000 with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '021 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 37 of the Complaint.

38.    The Citizens Communications Defendants admit that U.S. Patent No. 6,148,065 ("the '065 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on November 14, 2000, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '065 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 38 of the Complaint.

39.    The Citizens Communications Defendants admit that U.S. Patent No. 6,335,965 ("the '965 patent"), entitled "Voice-Data Telephonic Interface Control System," appears to have issued from the PTO on January 1, 2002, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '965 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 39 of the Complaint.

40.    The Citizens Communications Defendants admit that U.S. Patent No. 6,434,223 ("the '223 patent"), entitled "Telephone Interface Call Processing System with Call Selectivity," appears to have issued from the PTO on August 13, 2002, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '223

patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 40 of the Complaint.

41.    The Citizens Communications Defendants admit that U.S. Patent No. 6,512,415 ("the '415 patent"), entitled "Telephonic-Interface Game Control System," appears to have issued from the PTO on January 28, 2003 with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '415 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 41 of the Complaint.

42.    The Citizens Communications Defendants admit that U.S. Patent No. 6,678,360 ("the '360 patent"), entitled "Telephonic-Interface Statistical Analysis System," appears to have issued from the PTO on January 13, 2004, with Ronald A. Katz named as the purported inventor. The Citizens Communications Defendants explicitly deny that the '360 patent is valid and enforceable. The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 42 of the Complaint.

## COUNT I
## (RAKTL'S PATENT INFRINGEMENT ALLEGATIONS AGAINST CITIZENS COMMUNICATIONS)

43.    The Citizens Communications Defendants incorporate by reference their responses to paragraphs 1-42 as though fully set forth herein.

44.    The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45.     The Citizens Communications Defendants admit that they operate telephone systems that use certain automated features.  The Citizens Communications Defendants deny the remaining allegations in paragraph 45 of the Complaint.

46.     The Citizens Communications Defendants deny the allegations in paragraph 46 of the Complaint.

47.     The Citizens Communications Defendants deny the allegations in paragraph 47 of the Complaint.

48.     The Citizens Communications Defendants deny the allegations in paragraph 48 of the Complaint.

49.     The Citizens Communications Defendants deny the allegations in paragraph 49 of the Complaint.

**COUNT II**
**(RAKTL'S PATENT INFRINGEMENT ALLEGATIONS AGAINST**
**THE LEAP DEFENDANTS)**

50.     The Citizens Communications Defendants incorporate by reference their responses to paragraphs 1-49 as though fully set forth herein.

51.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint.

52.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

53.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint.

54.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint.

55.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56.     The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint.

57.     The Citizens Communications Defendants deny all allegations set forth in the Complaint that were not expressly admitted above, including those allegations as to which The Citizens Communications Defendants are without knowledge or information sufficient to form a belief as to the truth thereof.

## CITIZENS COMMUNICATIONS' AFFIRMATIVE DEFENSES

### First Affirmative Defense

58.     No Citizens Communications Defendant has infringed, nor does any Citizens Communications Defendant now infringe, either directly or indirectly, any valid claim of any of the patents identified in paragraph 44 of the Complaint (the '984, '285, '707, '863, '551, '734, '893, '120, '065, '965, '223, '415 and '360 patents; collectively, "Asserted Patents").

### Second Affirmative Defense

59.     The claims of the Asserted Patents are invalid for failure to satisfy one or more of the conditions of patentability of 35 U.S.C. § 1 *et seq.*, including, without limitation, 35 U.S.C. §§ 102, 103 and/or 112.

### Third Affirmative Defense

60.     On information and belief, by virtue of the proceedings in the PTO during the prosecution of the applications that matured into the Asserted Patents, as illustrated by their prosecution histories, RAKTL is estopped from asserting that Citizens Communications has infringed, directly or indirectly, any claim of the Asserted Patents, either literally or under the doctrine of equivalents.

## Fourth Affirmative Defense

61.     On information and belief, RAKTL's claims are barred based on the doctrine of prosecution laches.

## Fifth Affirmative Defense

62.     On information and belief, RAKTL's claims are barred in whole or in part by the doctrine of laches.

## Sixth Affirmative Defense

63.     RAKTL's Complaint fails to state a claim on which relief can be granted.

## Seventh Affirmative Defense

64.     The Asserted Patents are unenforceable in whole or in part due to inequitable conduct in their procurement, as described with particularity in the averments of Count III of the Citizens Communications Defendants' Counterclaims below, which averments are realleged and reincorporated here by reference as if set forth in full.

## CITIZENS COMMUNICATIONS DEFENDANTS' COUNTERCLAIMS FOR DECLARATORY JUDGMENT

As for their counterclaims against Ronald A. Katz Technology Licensing, L.P., Citizens Communications Co., Frontier Communications of America, Inc., and Frontier Subsidiary Telco LLC (collectively, "Citizens Communications Defendants") allege and aver as follows:

## GENERAL ALLEGATIONS AND PARTIES

65.     Citizens Communications Co. is a Delaware corporation with its principal place of business located at Three High Ridge Park, Stamford, Connecticut 06905.

66.     Frontier Communications of America, Inc. is a Delaware corporation with its principal place of business located at 180 South Clinton Avenue, Rochester, New York 14646.

67.     Frontier Subsidiary Telco LLC is a Delaware limited liability company with its principal place of business located at 180 South Clinton Avenue, Rochester, New York 14646.

68.     On information and belief, Ronald A. Katz Technology Licensing, L.P. ("RAKTL") is a limited partnership organized under the laws of the State of California, with its principal place of business located at 9220 Sunset Blvd., Ste. 315, Los Angeles, California 90069.

69.     This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a) and pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202.

70.     RAKTL is subject to personal jurisdiction in this district.

71.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391 and 1400(b).

72.     In its Complaint, RAKTL asserts that it owns the following U.S. Patent Nos. 5,128,984 ("the '984 patent"); 5,351,285 ("the '285 patent"); 5,561,707 ("the '707 patent"); 5,684,863 ("the '863 patent"); 5,828,734 ("the '734 patent"); 5,917,893 ("the '893 patent"); 5,974,120 ("the '120 patent"); 6,148,065 ("the '065 patent"); 6,335,965 ("the '965 patent"); 6,434,223 ("the '223 patent"); 6,512,415 ("the '415 patent"); and 6,678,360 ("the '360 patent") (collectively, "Asserted Patents").

73.     In its Complaint, RAKTL asserts that the Citizens Communications Defendants have infringed and continue to infringe the Asserted Patents.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT

74.     The Citizens Communications Defendants repeat and reallege the allegations of paragraphs 65-73 of this Counterclaim as if fully set forth herein.

75. The Citizens Communications Defendants have not infringed, either directly or indirectly, any valid claim of any of the Asserted Patents, and the Citizens Communications Defendants do not now infringe, either directly or indirectly, any valid and asserted claim of any of the Asserted Patents.

76. The Citizens Communications Defendants are entitled to a declaration pursuant to 28 U.S.C. § 2201 stating that they have not infringed and do not infringe, directly or indirectly, any valid claim of the Asserted Patents.

<h2 style="text-align:center">COUNT II<br>DECLARATORY JUDGMENT OF INVALIDITY</h2>

77. The Citizens Communications Defendants repeat and reallege the allegations of paragraphs 65-76 of this Counterclaim as if fully set forth herein.

78. The Asserted Patents are invalid for failure to comply with the requirements of 35 U.S.C. §§ 1 *et seq.*, including but without limitation §§ 102, 103 and 112.

79. The Citizens Communications Defendants are entitled to a declaration pursuant to 28 U.S.C. § 2201 stating that the claims of the Asserted Patents are invalid.

<h2 style="text-align:center">COUNT III<br>DECLARATORY JUDGMENT OF UNENFORCEABILITY</h2>

80. The Citizens Communications Defendants repeat and reallege the allegations of paragraphs 65-79 of this Counterclaim as if fully set forth herein.

81. The Citizens Communications Defendants request a declaratory judgment that the Asserted Patents are unenforceable due to inequitable conduct in their procurement.

82. The Asserted Patents are unenforceable, in whole or in part, due to inequitable conduct by RAKTL, prior assignees of some of the Asserted Patents, the named inventor Ronald A. Katz and/or by their attorneys and appointed representatives (collectively, "RAKTL") before

the United States Patent and Trademark Office ("the PTO") during the prosecution of the

Asserted Patents and/or related patents and patent applications.

83.     Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for

Patent Examination Procedure ("MPEP") § 2000.01 *et seq.* impose a duty of candor and good

faith on each individual associated with the filing and prosecution of a patent application before

the PTO, which requires he or she to disclose to the PTO all information that is material to the

patentability of the application under examination.  Breach of this duty of candor, good faith and

honesty with intent to deceive the PTO constitutes inequitable conduct so as to render the

affected patents unenforceable.

84.     Upon information and belief, during the prosecution of the applications that

ultimately led to the issuance of the Asserted Patents and the related applications and/or patents

– upon which the Asserted Patents claim priority and which also contain related and material

claimed subject matter – RAKTL engaged in a pattern or practice of conduct that violated the

duty of candor, good faith and honesty owed by patent applicants.

85.     Upon information and belief, on multiple occasions as part of the prosecution of

the Asserted Patents and related patents and/or applications, RAKTL, with intent to deceive the

PTO, engaged in inequitable conduct, including (a) failing to disclose material prior art known

to RAKTL; (b) failing to inform the PTO of inconsistent positions taken during prosecution;

(c) failing to identify and disclose material information from related litigation or proceedings;

(d) failing to inform patent examiners of adverse findings by other examiners; and (e) making

false claims of priority so as to avoid prior art.  RAKTL's repeated and intentional violations of

the duty of candor, good faith and honesty, which are set forth in detail below, render the

Asserted Patents unenforceable.  The Citizens Communications Defendants' investigation is

ongoing. The Citizens Communications Defendants reserve the right to seek leave to amend their Answer, Affirmative Defenses and Counterclaims to include additional facts or bases of inequitable conduct as they become known.

86.    In addition to the Asserted Patents, other related patents and applications, to which the Asserted Patents claim priority, are relevant to this Counterclaim for a declaratory judgment of unenforceability. These related patents include U.S. Patent Nos. 4,845,739 ("the '739 patent"); 4,930,150 ("the '150 patent"); U.S. Patent No. 5,014,298 ("the '298 patent"); 5,073,929 ("the '929 patent"); 5,224,153 ("the '153 patent"); 5,251,252 ("the '252 patent"); 5,365,575 ("the '575 patent") 5,255,309 ("the '309 patent"); 5,815,551 ("the '551 patent"); 6,016,344 ("the '344 patent"). The related applications include U.S. Patent Application No. 06/753,299 ("the '299 application").

## A.    RAKTL INTENTIONALLY FAILED TO DISCLOSE MATERIAL PRIOR ART

87.    Upon information and belief, as part of the prosecution of the Asserted Patents and related patents and/or applications, RAKTL repeatedly failed to disclose material references known to RAKTL with the intent to deceive the PTO, as set forth below.

### a.    RAKTL intentionally failed to disclose the Barger patent

88.    Upon information and belief, RAKTL had knowledge of and failed to disclose US. Patent No. 4,071,698 to Barger, *et al.* ("the Barger patent") to the PTO as part of the prosecution of several of the Asserted Patents and related patents and/or applications.

89.    The Barger patent was filed with the PTO on January 10, 1977, eight years before the effective filing date of RAKTL's first patent, and is prior art to the Asserted Patents.

90.    Many features relevant to RAKTL's claims are disclosed in the Barger patent. For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information. Because

the Barger patent discloses many of the central features claimed by RAKTL, it would have been material to the PTO in deciding whether to allow RAKTL's then-pending claims.

91.     Upon information and belief, RAKTL became aware of the Barger patent and its materiality and relevance to RAKTL's claims at least as early as January 1989 as part of the prosecution of its international application WO 87/000375 ("WO '375 application"), which is based on RAKTL's '299 application. Upon information and belief, on or about December 27, 1988, as part of the prosecution of the WO '375 application, the European Patent Office sent RAKTL's European attorney, Mr. Graham F. Coles, a search report identifying the Barger patent as "particularly relevant" in regard to the patentability of RAKTL's pending claims.

92.     The materiality of the Barger patent to the Asserted Patents was confirmed by the PTO's Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), affirmed a patent examiner's rejection of certain of RAKTL's pending claims based in part on the disclosure of the Barger patent.

93.     All of the Asserted Patents claim priority to the '299 application.

94.     Notwithstanding RAKTL's knowledge of the Barger patent and of its materiality, RAKTL failed to disclose this material prior art to the PTO during prosecution of at least the '739, '150, '929, '984, '153, '965, '252, '734 and '863 patents.

95.     RAKTL also failed to disclose the Barger patent to the PTO as part of the substantive prosecution of the '285 patent; instead RAKTL withheld the Barger patent from the PTO until after a notice of allowance had issued and after the issue fee was paid before disclosing the Barger patent seven days before the '285 patent issued.

96.     Upon information and belief, RAKTL withheld the Barger patent with an intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled to in at

least the '739, '150, '984, '965, '734, '863 and '285 patents, thereby committing inequitable conduct and rendering those patents unenforceable.

97.     The inequitable conduct committed by RAKTL with respect to at least the '739, '150, '984, '965, '734, '863 and '285 patents taints other related patents, which claim priority to or are related to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

98.     At least the '893 patent claims priority from and/or is related to and claims related subject matter to both the '150 and '285 patents to which the Barger patent is material. Accordingly, at least the '893 patent is likewise rendered unenforceable due to inequitable conduct committed by RAKTL as part of the prosecution of the '150 and '285 patents.

99.     Likewise, at least the '707, '863, '734, '893, '120, '065, '965, '223, '285, '415 and '360 patents claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material. Accordingly, at least the '707, '863, '734, '893, '120, '065, '965, '223, '285, '415 and '360 patents are likewise rendered unenforceable due to inequitable conduct committed by RAKTL as part of the prosecution of the '739 patent.

100.    Accordingly, at least the '984, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents are all rendered unenforceable for inequitable conduct due to RAKTL's intentional failure to disclose the Barger patent to the PTO.

**b.     RAKTL intentionally failed to disclose the DeBruyn patent**

101.    Upon information and belief, RAKTL withheld European Patent No. 0032410 to DeBruyn, which corresponds with Canadian Patent No. 1,162,336 ("the DeBruyn patent") from the PTO during prosecution of many of its earlier patents.

102.    The DeBruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery.

103.    The DeBruyn patent was cited in the same European search report that identified the Barger patent.  The European search report also identified the DeBruyn patent as "particularly relevant."

104.    The Director of the PTO has relied on the DeBruyn patent in ordering the reexamination of several of RAKTL's patents, including the '707 and '309 patents.  For example, with regard to the '707 patent, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent and other patents], a substantial new question of patentability is raised as to claim 206 of the ['707 patent] and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate."  Reexamination No. 90/006978, Director Initiated Order for Reexamination mailed March 26, 2004, at 7.

105.    An Examiner has also determined that the DeBruyn patent anticipates under 35 U.S.C. § 102(b) at least claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent and renders obvious under 35 U.S.C. § 103 claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 of the '309 patent.  Reexamination Nos. 90/006,976 and 90/007092, Office Action mailed Sept. 9, 2005, at 2, 9-19, 32-43.

106.    The DeBruyn patent discloses many features relevant to RAKTL's claims, including receiving the caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.  Because the DeBruyn patent discloses many of the central features claimed by RAKTL, it would have been material to the PTO in deciding whether to allow RAKTL's then-pending claims.

107.    Upon information and belief, RAKTL was aware of the materiality, significance and relevance of the DeBruyn patent, yet failed to disclose it to the PTO during prosecution of at least the '252, '739, '150, '285, '298, '929, '984, '734, '965 and '863 patents.

108.    Upon information and belief, RAKTL withheld the DeBruyn patent from the PTO with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled in at least the '252, '739, '150, '285, '298, '929, '984, '734, '965 and '863 patents, thereby committing inequitable conduct and rendering those patents unenforceable.

109.    The inequitable conduct committed by RAKTL with respect to at least the '252, '739, '150, '285, '298, '929, '984, '734, '965 and '863 patents taints other related patents, which claim priority to or are related to these patents and which claim related subject matter to which the DeBruyn patent is material, rendering these related patents unenforceable.

110.    At least the '984, '285, '707, '863, '551, '734, '893, '120, '065, '965, '223, '415 and '360 patents claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material.  Accordingly, at least the '984, '285, '707, '863, '551, '734, '893, '120, '065, '965, '223, '415 and '360 patents are rendered unenforceable due to the inequitable conduct committed by RAKTL as part of the prosecution of the '739 patent.

111.    Likewise, at least the '893 patent claims priority from and claims subject matter related to both the '150 and '285 patents to which the DeBruyn patent is also material. Accordingly, at least the '893 is likewise rendered unenforceable due to the inequitable conduct committed as part of the prosecution of the '150 and '285 patents.

112.    Similarly, at least the '734, '120 and '223 patents claim priority from and claim subject matter related to the '929, '984 and '252 patents to which the DeBruyn patent is also material.  The close relationship between these children patents and those to which they claim

priority is evidenced by terminal disclaimers filed by Katz for at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the subject matter claimed in these patents and that disclosed in the '252 patent. Accordingly, at least the '734, '120 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '929, '984 and '252 patents.

113.    Accordingly, at least the '984, '252, '285, '707, '863, '551, '734, '893, '120, '065, '965, '223, '415 and '360 patents are rendered unenforceable due to the inequitable conduct due to RAKTL's intentional failure to disclose the DeBruyn patent to the PTO.

   c.    **RAKTL intentionally failed to disclose the Yoshizawa reference**

114.    As part of the prosecution of at least the '309, '575, '252, '734 and '965 patents, RAKTL failed to disclose a prior art article entitled "Voice Response System For Telephone Betting" by Yoshizawa, *et al.* ("the Yoshizawa article"). The article appeared in the 1977 issue of *Hitachi Review* magazine.

115.    Many features relevant to at least the '575, '252, '734 and '965 patents are disclosed in the Yoshizawa article. For example, Yoshizawa discloses limiting access to and use of a telephone-based gambling or lottery system and qualifying callers based on an account number. Because the Yoshizawa patent discloses many of the central features claimed by RAKTL, it would have been material to the PTO in deciding whether to allow RAKTL's then-pending claims.

116.    Upon information and belief, RAKTL was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, well before the issuance of the '575, '252, '734 and '965 patents, when it was cited in response to interrogatories in *First Data Resources, Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal. 1991) ("the West case").

117.    Notwithstanding RAKTL's knowledge of the Yoshizawa article and its materiality to at least the '575, '252, '734 and '965 patents, upon information and belief, RAKTL failed to disclose the reference to the PTO as part of the prosecution of at least the '575, '252, '734 and '965 patents with intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering at least the '575, '252, '734 and '965 patents unenforceable.

118.    The inequitable conduct committed by RAKTL with respect to at least the '575 patent taints other related patents, which claim priority to the '575 patent and which claim related subject matter to which the Yoshizawa article is material, rendering these related patents unenforceable.

119.    At least the '863, '734, '893, '120, '065, '223, '415 and '360 patents are related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material. Accordingly, at least the '863, '734, '893, '120, '065, '223, '415 and '360 patents are rendered unenforceable by inequitable conduct by RAKTL's failure to disclose the Yoshizawa article.

120.    Accordingly, at least the '252, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents are rendered unenforceable due to inequitable conduct by RAKTL's failure to disclose the Yoshizawa article to the PTO.

**d.    RAKTL intentionally failed to disclose International Application WO 87/00375**

121.    Upon information and belief, RAKTL failed to disclose RAKTL's own PCT application, WO 87100375 ("the WO '375 application"') to the PTO prior to the payment of the issue fee during prosecution of the '285 patent.

122.    Upon information and belief, RAKTL also failed to disclose the publication of the WO '375 application during the prosecution of the '863, '551, '739, and '929 patents.

123.    The WO '375 application has the same specification as the '299 application to which all of the Asserted Patents claim priority. The '299 application also discloses much of the same subject matter incorporated in subsequent patents that claim priority to it.

124.    The WO '375 application was published on January 15, 1987. The WO '375 application would therefore be considered prior art for any claims with a filing date more than a year after the publication date under 35 U.S.C. § 102(b).

125.    The '739, '929, '285, '863, '156 and '551 patents incorporated and claimed new subject matter from the WO '375 application and were filed more than one year after the publication date of January 15, 1987. Therefore, the WO '375 application would be prior art for any new matterial added and claimed in the '739, '929, '285, '863, '156 and '551 patents.

126.    The published WO '375 application would have been material to a PTO examiner in determining what claims, if any, RAKTL might be entitled to in the '739, '863, '929, and '285 patents. The WO '375 application would have been relevant to many of the basic elements claimed in the Asserted Patents, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

127.    Upon information and belief, despite RAKTL's duty to disclose material information to the PTO, and despite RAKTL's personal knowledge of the WO '375 application and its materiality, RAKTL failed to disclose the WO '375 application to the PTO during the examination of at least the '285, '863, '551, '739 and '929 patents.

128.    Upon information and belief, RAKTL intentionally withheld the WO '375 application from the PTO during the examination of at least the '285, '863, '551, '739 and '929 patents with an intent to deceive the PTO into issuing patent claims of a scope beyond which

RAKTL was entitled, thereby committing inequitable conduct and rendering the '285, '863, '551, '739 and '929 patents unenforceable.

129.    The inequitable conduct committed by RAKTL in connection with the '285, '863, '551, '739 and '929 patents taints other related patents which claim priority from those patents and which claim related subject matter to which the WO '375 application was material, rendering these related patents unenforceable. For example, all of the Asserted Patents, with the exception of the '968 patent, claim priority from and claim subject matter related to the '739 patent to which the WO '375 application was material. Accordingly, at least the '984, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents are likewise rendered unenforceable due to inequitable conduct committed in the '739 patent.

130.    Accordingly, at least the '984, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents are rendered unenforceable due to RAKTL's intentional failure to disclose the WO '375 application.

### e.    RAKTL intentionally failed to disclose the Periphonics references

131.    Upon information and belief, RAKTL intentionally withheld from the PTO relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which RAKTL was not entitled.

132.    Upon information and belief, in April 1993, in connection with the West case, materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").

133.    Upon information and belief, the Nilsson firm was involved in prosecuting many of RAKTL's patent applications, including those which would later issue as the Asserted Patents.

134.    Upon information and belief, included in the West materials were a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication

#3000002, January 7, 1980 ("the Bank-From-Home reference") (Bates numbers W73055 -

W73095) and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and

User Guide, Publication #3270601C, 1987 ("the VoicePac reference") (Bates numbers W73219 -

W733021).

135.    Upon information and belief, both the Bank-From-Home reference and VoicePac

reference are highly relevant and material to many claims of the Asserted Patents.  The Bank-

From-Home reference describes such asserted claim limitations as structures for interfacing,

storing, qualifying, switching, processing, voice generation, verifying credit and designating, as

related to callers to the disclosed system.  The VoicePac reference describes such asserted claim

limitations as interfacing callers to the system and transferring callers to a customer service

representative.

136.    Upon information and belief, during the prosecution of the application which

ultimately issued as the '965 patent, RAKTL stated:  "During litigation [of the West case], a

voluminous quantity of prior art, that is, some 500 items (including single or plural related

documents grouped together), were identified by the defendant.  However, during pretrial

procedures, the defendant distilled the applied art to 59 separate items (including single or plural

related documents)."  Paper no. 3, filed November 4, 1994.  RAKTL also stated:  "The

voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on

the second set of forms PTO-1449 (Supplemental I)."  Id.

137.    Upon information and belief, RAKTL made the same statements in at least those

applications that later issued as the '285, '863 and '707 patents.

138.    Upon information and belief, at least the applications for the '863 and '551

patents refer the examiner to the references disclosed during the prosecution of the '707 patent.

139.    Upon information and belief, while other references in the West materials were submitted to the PTO during prosecution of the '285, '707, '863, '551, '893 and '965 patents, the Bank-From-Home and VoicePac references were withheld despite knowledge of their materiality.

140.    Upon information and belief, RAKTL intentionally withheld the Bank-From-Home and VoicePac references from the PTO as part of the prosecution of the '285, '707, '863, '551, '893 and '965 patents with an itnent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering at least the '285, '707, '863, '551, '893 and '965 patents unenforceable.

141.    The inequitable conduct committed by RAKTL in connection with at least the '285, '707, '863, '551, '893 and '965 patents taints other related patents. For example, the '065 and '360 patents have specifications substantially identical to those of the '707, '863 and '551 patents, and all rely for priority on the '739 patent, which also has a substantially identical specification. Accordingly, at least the '065 and '360 patents are rendered unenforceable due to inequitable conduct committed during the prosecution of the '707, '863 and '551 patents.

142.    The inequitable conduct committed by RAKTL in connection with at least the '285 patent taints other related patents. For example, the '893 patent claims priority from the '285 patent. The subject matter of one or more claims of the '893 includes subject matter that was at issue during prosecution of the '285 patent and to which the withheld Periphonics references would have been relelvant. Accordingly, at least the '893 patent is rendered unenforceable due to the inequitable conduct committed during prosecution of the '285 patent.

143.    Accordingly, at least the '285, '707, '863, '893, '065, '965 and '360 patents are rendered unenforceable due to RAKTL's intentional failure to disclose the Bank-From-Home and VoicePac references.

**f.    RAKTL failed to disclose the Corbett reference**

144.    Upon information and belief, RAKTL had knowledge of a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") and its materiality at least as early as August 13, 1993 when it was disclosed in connection with *First Data Resources Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal. 1991). Upon information and belief, First Data Resources (RAKTL's predecessor in interest) had knowledge of the Corbett reference in connection with West Interactive's motion for summary judgment of invalidity of the RAKTL patents at issue in that case.

145.    The Corbett reference is material to certain of the claimed subject matter of at least the '285, '734, '120, '965 and '223 patents. Many features relevant to RAKTL's claims are disclosed in the Corbett reference. For example, the Corbett reference discloses an interactive voice response system, multiple formats, user number and password, and consumable keys. Because the Corbett reference discloses many of the central features claimed by RAKTL, it would have been material to the PTO in deciding whether to allow the claims of the '285, '734, '120, '965 and '223 patents.

146.    Upon information and belief, RAKTL had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") as part of the prosecution of at least the '965 and '285 patents.

147.    Upon information and belief, RAKTL intentionally withheld the material Corbett reference from the PTO during the prosecution of at least the '285 and '965 patents with the

intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '285 and '965 patents unenforceable.

148.    Upon information and belief, RAKTL unreasonably delayed disclosing the Corbett reference to the PTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, and '223 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents.  Upon information and belief, RAKTL also mischaracterized the materiality of the Corbett reference to the PTO.  Upon information and belief, RAKTL took those actions with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '734, '120 and '223 patents unenforceable.

149.    Accordingly, at least the '285, '734, '120, '965 and '223 patents are rendered unenforceable for inequitable conduct due to RAKTL's actions with regard to the Corbett reference.

       **g.**      **RAKTL intentionally failed to disclose the Moosemiller reference**

150.    Upon information and belief, RAKTL had knowledge of and failed to disclose a reference entitled "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller reference"), as part of the prosecution of at least the '734 and '965 patents with an intent to deceive the PTO.  The Moosemiller reference was published in the March/April 1986 issue of *Speech Technology*.

151.    Upon information and belief, RAKTL had knowledge of the Moosemiller reference at least as early as July 21, 1998 in connection with a lawsuit brought by RAKTL and MCI Telecommunications Corp. against AT&T Corp. and others in the United States District

Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), in which RAKTL asserted that AT&T infringed certain patents owned by RAKTL.

152.    The Moosemiller reference was material to certain of the claimed subject matter in at least the '734 and '965 patents. The Moosemiller reference disclosed the use of DNIS, ACD/PBX, qualification based on user identification input, bridging to an attendant and multiple applications. Because the Moosemiller reference discloses many of the features claimed in the '734 and '965 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

153.    Upon information and belief, RAKTL intentionally withheld the material Moosemiller reference from the PTO during the prosecution of at least the '734 and '965 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '734 and '965 patents unenforceable.

154.    The inequitable conduct committed by RAKTL in connection with at least the '965 and '734 patents taints other related patents which claim priority to those patents and which claim related subject matter to which the Moosemiller reference was material, rendering these related patents uneforceable. For example the '120 and '223 patents claim priority from and claim subject matter related to the '965 and '734 to which the Moosemiller reference was material. Accordingly, at least the '120 and '223 patents are rendered unenforceable due to inequitable conduct committed during the prosecution of the '965 and '734 patents.

155.    Accordingly, at least the '734, '965, '120, '223 patents are rendered unenforceable for inequitable conduct due to RAKTL's intentional failure to disclose the Moosemiller reference.

h.    **RAKTL intentionally failed to disclose the Daudelin '995 patent**

156.    Upon information and belief, RAKTL had knowledge of and failed to disclose U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") as part of the prosecution of at least the '120 patent.

157.    The Daudelin '995 patent, which was filed on October 6, 1986 and issued on July 24, 1990, is prior art to at least the '120 patent, which was filed in 1995.

158.    The Daudelin '995 patent is material to certain of the claimed subject matter in at least the '120 patent. For example, the Daudelin '995 patent discloses a system for receiving calls in a toll free mode, placing orders for products, using automated voice response systems, human operators, or combinations thereof. Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the PTO in deciding whether to allow the claims of the '120 patent.

159.    Upon information and belief, RAKTL was aware of the Daudelin '995 patent, having cited it to the PTO more than two years prior to the issuance of the '120 patent. Upon information and belief, RAKTL listed the Daudelin '995 patent in previous IDS submissions during the prosecution of RAKTL's patents, although RAKTL had misspelled the name as "Dandelin."

160.    Upon information and belief, RAKTL intentionally withheld the material Daudelin '995 patent from the PTO during the prosecution of at least the '120 patent with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

161.    The inequitable conduct committed by RAKTL with respect to the '120 patent taints other related patents, which claim priority to the '120 patent and which claim related

subject matter to which the Daudelin '995 patent is material, rendering these related patents unenforceable.

162.    At least, the '223 patent claims priority to the '120 patent and claims subject matter related to the '120 patent to which the Daudelin '995 patent is material. At least the '223 and '120 patents share a common specification. Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct committed by RAKTL as part of the prosecution of the related '120 patent.

163.    Accordingly, at least the '120 and '223 patents are rendered unenforceable for inequitable conduct due to RAKTL's intentional failure to disclose the Daudelin '995 patent to the PTO.

i.    **RAKTL intentionally failed to disclose the Szlam '911 patent**

164.    Upon information and belief, RAKTL was made aware of U.S. Patent No. 4,797,911 ("the Szlam '911 patent) at least as early as September 10, 1991. The Szlam '911 patent was filed on June 16, 1987 and issued on January 10, 1989.

165.    The Szlam '911 patent is prior art to at least the '309 patent, which was filed on December 3, 1991.

166.    The Szlam '911 patent is material to certain of the claimed subject matter under consideration during prosecution of at least the '309 patent. For example, the Szlam '911 patent discloses ANI, assigning designations to callers, memory storage structure, providing voice signals to callers and structure for limiting the extent of access to the system by callers. Because the Szlam '911 patent discloses many of the features claimed in the '309 patent, it would have been material to the PTO in deciding whether to allow the claims of the '309 patent.

167.    Upon information and belief, RAKTL was aware of the Szlam '911 patent during the prosecution of the '309 patent as it was identified by the patent examiner during at least the

prosecution of U.S. Patent No. 5,048,075, which issued on September 10, 1991, and the '984 patent, which issued on July 7, 1992.

168.    Upon information and belief, RAKTL intentionally withheld the material Szlam '911 patent from the PTO during the prosecution of at least the '309 patent with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '309 patent unenforceable.

169.    The inequitable conduct committed by RAKTL in connection with the '309 patent taints other related patents. At least the '707 patent claims priority to the '309 patent and claims subject matter related to the '309 patent, to which the Szlam '911 patent is material. Accordingly, at least the '707 patent is rendered unenforceable due to inequitable conduct committed during the prosecution of the '309 patent.

**B.    RAKTL FAILED TO INFORM THE PTO OF INCONSISTENT POSITIONS TAKEN DURING PROSECUTION**

**a.    RAKTL intentionally failed to inform the PTO of inconsistent positions taken during prosecution regarding the Daudelin patents**

170.    At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent") (collectively, "the Daudelin patents"), were cited during the prosecution of certain of the Asserted Patents and related patents. The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

171.    Upon information and belief, RAKTL repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the Asserted Patents and failed to inform the different patent examiners of RAKTL's inconsistent positions.

172.    For example, upon information and belief, as part of the prosecution of the '734 patent, RAKTL characterized the Daudelin '910 patent as not being pertinent to either DNIS or ANI capabilities.

173.    Upon information and belief, contrary to the position RAKTL took as part of the prosecution of the '734 patent, as part of the prosecution of the '551 and '893 patents, RAKTL characterized the Daudelin '910 patent as "pertinent to DNIS capabilities."

174.    Upon information and belief, contrary to the positions taken as part of the prosecution of the '551 and '893 patents, RAKTL subsequently took the position as part of the prosecution of the '360 patent that "Daudelin does not teach DNIS."

175.    Upon information and belief, RAKTL took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of RAKTL's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering at least the '551, '734, '893 and '360 patents unenforceable.

176.    At least, the '120, '065, '223 and '415 patents claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material.  Accordingly, at least the '120, '065, '223 and '415 patents are likewise rendered unenforceable due to the inequitable conduct committed by RAKTL as part of the prosecution of the related '551, '734, '893 and '360 patents.

177.    Accordingly, at least the '734, '893, '120, '065, '223, '415 and '360 patents are rendered unenforceable for inequitable conduct due to RAKTL's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at

different times and failing to inform the different patent examiners of RAKTL's prior

inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope

beyond which RAKTL was entitled.

      **b.**      **RAKTL intentionally failed to inform the PTO of inconsistent positions taken during prosecution regarding the Riskin patent**

178.    Upon information and belief, RAKTL failed to inform the PTO of inconsistent

positions that RAKTL took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin

patent").

179.    Upon information and belief, as part of the prosecution of the '075 patent,

RAKTL stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to

accomplish routing."

180.    Upon information and belief, contrary to RAKTL's characterization of the Riskin

patent during prosecution of the '075 patent, RAKTL maintained as part of the prosecution of the

'120 patent that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party]

number identification") only, and not DNIS.

181.    Upon information and belief, by taking inconsistent positions as to the scope of

the Riskin patent at different times and failing to inform the patent examiner of the prior

inconsistent positions, and having the intent to deceive the PTO into issuing patent claims of a

scope beyond which RAKTL was entitled, RAKTL committed inequitable conduct, thereby

rendering at least the '075 and '120 patents unenforceable.

182.    At least, the '223 and '415 patents claim priority to one or more of the '075 and

'120 patents and claim subject matter related to these patent to which the Riskin patent is

material.  Accordingly, at least the '223 and '415 patents are likewise rendered unenforceable

due to the inequitable conduct committed by RAKTL as part of the prosecution of the related '075 and '120 patents.

183.    Accordingly, at least the '120, '415 and '223 patents are rendered unenforceable for inequitable conduct due to RAKTL's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled.

## C.    RAKTL FAILED TO IDENTIFY AND DISCLOSE MATERIAL INFORMATION FROM RELATED LITIGATION OR PROCEEDINGS

184.    Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the PTO has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising there from."

185.    Upon information and belief, as set forth below, as part of the prosecution of several of the Asserted Patents, RAKTL failed to identify or disclose material information from several litigations of which RAKTL was aware, which involved related patents and material subject matter relating to the Asserted Patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby constituting inequitable conduct.

### a.    RAKTL's failure to disclose *West Interactive Corp. v. First Data Resources, Inc.*

186.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska. West alleged, *inter alia*, that the '739 and '150 patents and

U.S. Patent No. 4,939,773 ("the '773 patent") were invalid on several theories including prior use and prior art.

187.    West's allegations in that suit are material to at least the '984, '252, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

188.    Upon information and belief, RAKTL was aware of *West Interactive Corp. v. First Data Resources, Inc.* during the prosecution of these patents.

189.    Nonetheless, upon information and belief, RAKTL failed to disclose the existence of *West Interactive Corp. v. First Data Resources, Inc.* and of the subject matter of West's allegations to the PTO as part of the prosecution of at least the '984, '252, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**b.    RAKTL's failure to disclose *First Data Resources, Inc. v. 900 Million, Inc.***

190.    On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California, alleging infringement of the '739, '150 and '773 patents.

191.    The defendants in *First Data Resources, Inc. v. 900 Million, Inc.,* filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

192.    The defendants' counterclaims in *First Data Resources, Inc. v. 900 Million, Inc.* are material to at least the '984, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents, all of which claim priority to at least the '739 patent.

193.    Upon information and belief, RAKTL was aware of *First Data Resources, Inc. v. 900 Million, Inc.,* during the prosecution of these patents.

194.    Nonetheless, upon information and belief, RAKTL failed to disclose the existence of *First Data Resources, Inc. v. 900 Million, Inc.* and the subject matter of the defendants' allegations to the PTO as part of the prosecution of at least the '984, '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

     **c.**     **RAKTL's failure to disclose *First Data Resources Inc. v. West Interactive Corp.***

195.    On August 20, 1991, First Data brought suit against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California, alleging infringement of the '739, '298 and '150 patents.

196.    The defendants in the West case filed a counterclaim alleging, *inter alia*, the invalidity and unenforceability of the '739, '298 and '150 patents.

197.    The defendants' allegations in that suit are material to at least the '285, '707, '863, '734, '893, '120, '065, '965, '223, '415 and '360 patents, all of which claim priority to at least the '739 patent.

198.    Upon information and belief, RAKTL was aware of *First Data Resources Inc. v. West Interactive Corp.* during the prosecution of these patents.

199.    Nonetheless, upon information and belief, as part of the prosecution of at least the '285, '707, '863, '551, '734, '893, '120, '065, '965, '223, '415 and '360 patents, RAKTL failed to disclose to the PTO the existence of *First Data Resources Inc. v. West Interactive Corp.* (or in the case of the '285 patent, RAKTL waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations

with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

>    **d.    RAKTL's failure to disclose *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.***

200.    On February 9. 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California, alleging infringement of the '739, '252, '309, '153, '285, '023, '707, '863 and '734 patents.

201.    In response to RAKTL's Complaint, the defendants in *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.* alleged, *inter alia*, that the '739, '153, '252, '023, '285, '707, '863 and '734 patents were invalid and/or unenforceable.

202.    The defendants' allegations in *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.* are material to at least the '065 and '965 patents, which are related patents to the patents at issue in that suit.

203.    Upon information and belief, RAKTL was aware of *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.* during the prosecution of these patents.

204.    Nonetheless, upon information and belief, as part of the prosecution of at least the '707, '762, '065 and '965 patents, RAKTL intentionally failed to disclose to the PTO the existence of *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.* and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

e.    **RAKTL's failure to disclose Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.**

205.    On July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), alleging infringement of the '298, '739, '150, '075, '929, '252, '309, '023, '285, '984, '120, '707 and '863 patents and U.S. Patent Nos. 5,218,631 ("the '631 patent"); 5,349,633 ("the '633 patent"); and 5,359,645 ("the '645 patent").

206.    In reply, AT&T Corp. asserted, *inter alia*, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents were invalid.

207.    AT&T Corp.'s allegations in *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* are material to at least the '893 and '120 patents, which are related to and claim related subject matter to the patents involved in that litigation.

208.    Upon information and belief, RAKTL was aware of *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* during the prosecution of the '893 and '120 patents.

209.    Nonetheless, upon information and belief, RAKTL failed to disclose the existence of *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp.* and of the subject matter of AT&T Corp.'s allegations to the PTO as part of the prosecution of at least the '893 and '120 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

f.    **RAKTL's failure to disclose Patent Interference No. 103,697**

210.    Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996. One conclusion of the Board of Patent Appeals and Interferences in that patent inference was that the '968 patent specification did not provide

written support for certain limitations claimed by RAKTL, which included transferring calls to an operator in certain circumstances.

211.    The Board of Patent Appeals and Interferences' conclusion that the '968 patent lacked support for certain claim limitations would have been material to the patent examiners of the '863, '734, '893, '120 and '965 patents, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art. Upon information and belief, all of these patents claim priority to the '968 patent.

212.    Nonetheless, upon information and belief, RAKTL intentionally failed to disclose the existence of Patent Interference No. 103,697 and the Board of Patent Appeals and Interferences' findings to the patent examiners of at least the '863, '734, '893, '120 and '965 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**D.    RAKTL FAILED TO INFORM PATENT EXAMINERS OF ADVERSE FINDINGS BY OTHERS**

213.    The MPEP § 2001.06(b) states that each individual associated with the filing and prosecution of a patent application before the PTO has "a duty to bring to the attention of the examiner, or other [PTO] official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to the patentability' of the application in question." Furthermore, according to this section of the MPEP, such individuals:

> cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner. For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.

a.     **RAKTL failed to disclose adverse findings in related patent prosecutions**

214.    During the prosecution of the '344 patent, RAKTL made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party telephone number." Further, upon information and belief, RAKTL falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to RAKTL with a filing date of Feb. 14, 1987, of which the present application is a continuation." The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted RAKTL's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is <u>not</u> a continuation of '968." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification and, as such, any claims directed to the new matter were not entitled to the effective filing date of the '968 patent. Further, Examiner Brown rejected RAKTL's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [*i.e.*, the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means.'"

215.    Despite Examiner Brown's refutation of RAKTL's assertions that the '344 patent application was a continuation of the '968 patent and that the '968 patent supported the automatic number identification (ANI) decoder means limitation, in the subsequent Patent Interference No. 103,697, RAKTL claimed support for "means connected to said interface switching means for directly providing a caller telephone number [ANI] from said telephone facility" in the '968 patent.

216.    Further, upon information and belief, during the Patent Interference No. 103,697, RAKTL did not inform the Board of Patent Appeals and Interferences of Examiner Brown's

prior repudiation of RAKTL's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation.

217.    Examiner Brown's prior repudiation of RAKTL's assertion would have also been material to the Board of Patent Appeals and Interferences' determination as to whether RAKTL was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam '911 patent"), particularly in as much as the Board ultimately concluded that Count 1, which was alleged by RAKTL to have support in the '968 patent, was lacking. Count 1 recited, in part, "means connected to said interface switching means for directly providing a caller telephone number [ANI] from said telephone facility" and "computer means . . . responsive to said caller telephone number."

218.    Even though the Board concluded that support for Count 1 was lacking in the '968 patent, as part of the prosecution of the '156 patent in 1997, RAKTL again alleged, but this time to Examiner Woo, that the '968 patent provided support for the limitation of "interface means . . . for receiving automatic number identification [ANI] data." Specifically, RAKTL alleged that the claim limitation was supported by essentially the same text RAKTL previously cited during prosecution of the '344 patent and in the interference proceeding.

219.    Upon information and belief, RAKTL did not inform Examiner Woo of Examiner Brown's finding of the lack of written support in the '968 patent for the limitation "automatic number identification (ANI) decoder means." Nor did RAKTL inform Examiner Woo of the Board of Patent Interferences' finding of a lack of written support in the '968 patent for the limitation "computer means . . . responsive to said caller telephone number."

220.    Upon information and belief, RAKTL intentionally failed to inform the Board of Patent Appeals and Interferences and Examiner Woo of the prior repudiations of RAKTL's false

assertions that certain claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor and with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '156 patent unenforceable.

221.   Likewise, upon information and belief, during prosecution of the '965 patent, RAKTL attempted to traverse a claim rejection of RAKTL's then pending claim 68 in light of the Szlam '911 patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before . . . Szlam."

222.   Upon information and belief, RAKTL failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means."

223.   Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

224.   Upon information and belief, RAKTL intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '965 patent unenforceable.

225.   Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by RAKTL pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the

interaction between the caller and the operator would proceed after the caller has been transferred thereto for 'person-to-person' interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

226.    RAKTL's continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in another subsequently filed application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

227.    Upon information and belief, RAKTL failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification. Upon information and belief, RAKTL's failure to disclose to Examiner Weaver the finding of Examiner Brown regarding a lack of written support was in violation of RAKTL's duty of candor and with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '360 and '065 patents unenforceable.

**b.    RAKTL failed to disclose adverse findings from appeal rulings**

228.    Upon information and belief, RAKTL failed to inform the patent examiners of certain of the Asserted Patents of the existence and outcome of certain Appeal Rulings of related patents that were adverse or contrary to positions RAKTL took during the prosecution of the Asserted Patents.

229.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the Asserted Patents, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

230.    The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '893, '120, '065 and '965 patents with respect to any claims reciting a multiple format limitation.

231.    Nonetheless, upon information and belief, RAKTL intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '734, '893, '120, '065 and '965 patents unenforceable.

232.    The inequitable conduct committed by RAKTL with respect to the '734, '893, '120, '065 and '965 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material, thereby, rendering these related patents, including at least the '233, '415 and '360 patents, unenforceable.

233.    Accordingly, at least the '734, '893, '120, '065, '965 '223, '415 and '360 patents are rendered unenforceable for inequitable conduct due to RAKTL's failure to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent with the intent to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled.

**E.    RAKTL MADE FALSE CLAIMS OF PRIORITY SO AS TO AVOID PRIOR ART**

234.    Upon information and belief, during the prosecution of several Asserted Patents, RAKTL made false claims of priority to earlier applications with the intent to avoid prior art, as set forth below.

235.    For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, RAKTL made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], *i.e.*, the WO '375 application, was published more than one year prior to the filing of the '734 patent and, therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application. Therefore, upon information and belief, RAKTL intentionally misrepresented the priority dates for pending claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

236.    Likewise, during prosecution of the '734 patent, RAKTL identified US. Patent No. 4,792,461 to Brown ("the Brown patent") to the PTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at 11-12.  Contrary to RAKTL's assertion, however, certain of the relevant pending application's claims, which were directed to multiple call modes, were not entitled to the '150 patent's priority date because there is no suggestion of multiple call modes in the '150 patent.  Therefore, upon information and belief, RAKTL intentionally misrepresented the priority dates for pending claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

237.    Similarly, upon information and belief, during prosecution of the '734 patent, RAKTL made a false claim to priority in an attempt to antedate a prior art reference by Hester. RAKTL stated "the reference by Hester bears a date of 1985, apparently 'September'.  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." The parent application RAKTL referenced, however, does not disclose toll free calls nor 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such

limitations is entitled to claim priority to that parent application's filing date. Therefore, upon information and belief, RAKTL intentionally misrepresented the priority dates for pending claims during the prosecution of the '734 patent, in order to antedate the Hester reference.

238.    Upon information and belief, during prosecution of the '734 patent, RAKTL mischaracterized the pending application with respect to prior art U.S. Patent No. 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, RAKTL stated "the present application is entitled to a priority date earlier than that of the subject reference." Upon information and belief, RAKTL's statement was false at the time it was made since there were claims in RAKTL's application (such as then pending claim 17) which contained and claimed new subject matter and were, therefore, not entitled to an earlier priority date. Therefore, upon information and belief, RAKTL intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent in order to antedate the Kaplan patent.

239.    Upon information and belief, in violation of the duty of good faith and candor, RAKTL made the above-identified false claims of priority in order to avoid the prior art and to deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

240.    In addition, the inequitable conduct committed by RAKTL with respect to the '984 and '734 patents taints other related patents, namely the '120, '223 and '415 patents, which claim priority to these patents and which claim related subject matter to which the prior art patents are material, rendering these related patents unenforceable.

241.    Accordingly, at least the '984, '734, '120, '223 and '415, patents are rendered unenforceable for inequitable conduct due to RAKTL's false claims of priority to earlier

applications with the intent to avoid prior art and deceive the PTO into issuing patent claims of a scope beyond which RAKTL was entitled.

242.    As set forth above, RAKTL engaged in a pattern and practice of inequitable conduct throughout the prosecution of the Asserted Patents and/or other related patents that infected, either directly or indirectly, all of the Asserted Patents, thereby rendering them unenforceable for inequitable conduct.

243.    Citizens Communications, therefore, is entitled to a declaration pursuant to 28 U.S.C. § 2201 stating that the claims of the Asserted Patents are unenforceable due to inequitable conduct in their procurement.

## COUNT IV
## ATTORNEY FEES

244.    The Citizens Communications Defendants repeat and reallege the allegations of paragraphs 65-243 of this Counterclaim as if fully set forth herein.

245.    On information and belief, RAKTL has pursued this action aware that the Asserted Patents are invalid and unenforceable and that Citizens Communications has not infringed and does not infringe the Asserted Patents.

246.    This is therefore an exceptional case under 35 U.S.C. § 285, and The Citizens Communications Defendants are entitled to recover attorneys' fees and costs associated with defending this action.

## CITIZENS COMMUNICATIONS' PRAYER FOR RELIEF

WHEREFORE, Citizens Communications respectfully requests that this Court enter judgment in their favor and grant the following relief:

A.    A declaration that Citizens Communications has not infringed and does not infringe any valid claim of the Asserted Patents:  U.S. Patent Nos. 5,128,984; 5,351,285;

5,561,707; 5,684,863; 5,828,734; 5,917,893; 5,974,120; 6,148,065; 6,335,965; 6,434,223;

6,512,415; and 6,678,360.

B.    A declaration that the Asserted Patents are invalid;

C.    A declaration that the Asserted Patents are unenforceable;

D.    Dismissal, with prejudice, of RAKTL's Complaint;

E.    An Order denying RAKTL all relief it has requested in its Complaint;

F.    An Order finding that this is an exceptional case under 35 U.S.C. § 285 and

awarding Citizens Communications its reasonable attorney fees and costs; and

G.    Such other and further relief as the Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Citizens Communications requests a jury trial of any issues triable by jury.


OF COUNSEL:

Samuel J. Najim
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
(404) 521-3939

Dated:  August 10, 2007

811921

POTTER ANDERSON & CORROON LLP


By: _____
        Philip A. Rovner (No. 3215)
        Hercules Plaza
        P.O. Box 951
        Wilmington, Delaware 19899
        (302) 984-6000
        provner@potteranderson.com

Counsel for Defendants
CITIZENS COMMUNICATIONS CO.,
FRONTIER COMMUNICATIONS OF
AMERICA, INC., AND FRONTIER
SUBSIDIARY TELCO LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 10, 2007, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Rebecca L. Butcher, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19801
butcher@lrclaw.com

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com